ORIGINAL

# In the United States Court of Federal Claims

No. 10-381T
(Filed March 15, 2016)
NOT FOR PUBLICATION

FILED
MAR 15 2016
U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * * * * * * * *
                                           *
LUCY HAMRICK POWELL and                    *
JAMES CLEMENT POWELL,                      *
                                           *
                         Plaintiffs,       *
                                           *
              v.                           *
                                           *
THE UNITED STATES,                         *
                                           *
                         Defendant.        *
                                           *
* * * * * * * * * * * * * * * * * * * * * *
```

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

Pending before the Court is defendant's motion for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). For the reasons set forth below, the Court finds that plaintiffs have no evidence to support their claims that their 2004 Individual Retirement Account (IRA) withdrawals were non-taxable events entitling them to a partial refund of their 2004 federal tax payments. Defendant's motion for summary judgment is **GRANTED**.

### I. BACKGROUND

A. Tax Refund Claim

James Clement Powell and Lucy Hamrick Powell are spouses and *pro se* plaintiffs who run an energy business in Virginia. Plaintiffs timely filed their 2004 joint federal tax return on August 4, 2005 (following an extension from the IRS). Def.'s Mot. to Dismiss, Ex. 1. In their 2004 tax return, plaintiffs listed $78,000 in IRA distributions as income. *Id.* Plaintiffs allege that these distributions were

rolled over into another retirement account, making them non-taxable. Pls.' Resp. to Mot. for Summ. J. (Pls.' Opp'n) at 2.

Plaintiffs' 2004 tax liability totaled $77,648.00. Def.'s Mot. to Dismiss, Ex. 1. Plaintiffs paid their 2004 federal tax liability, including penalties, in multiple installments as follows: $10,000 with their return on August 4, 2005; $35,000 on December 22, 2005; $10,000 on February 17, 2006; and, $9,000 on April 21, 2006. Def.'s Mot. to Dismiss, Ex. 2. Plaintiffs also had several "overpayment credits" applied to their tax obligation as follows: $1,856.77 on April 15, 2005; $8,739.38 on September 22, 2005; $10,000 on July 6, 2006; and, $356.28 on November 6, 2006. *Id.*

On August 26, 2008, plaintiffs filed an amended 2004 tax return claiming an overpayment of $25,131.00 due to the erroneous categorization of their IRA distributions as income. Attach. 1 to Compl. Plaintiffs claimed that they rolled their IRA distributions into a commercial real estate investment and that this constituted a non-taxable event. Compl. at 1; *see* 26 U.S.C. § 408(d)(3) (rollover contribution requirements).

The Internal Revenue Service (IRS) rejected plaintiffs' amended 2004 return because it was filed more than three years after the due date of their original return and thus outside of the allowable look-back window. Attach. 2 to Compl. Plaintiffs appealed this rejection to the IRS's Richmond, Virginia Appeals office. *See* Att. 5 to *id.* In their appeal, plaintiffs attached a copy of a check made payable to the IRS for $12,567.00 dated October 28, 2006, and argued that since this payment was made within two years of their August 26, 2008 amended return it fell within the two-year look-back period under 26 U.S.C. § 6511(b). Attachs. 3, 5 to *id.* Plaintiffs' appeal was denied without substantive explanation. Attach. 5 to *id.*

## B. Procedural History

Plaintiffs filed a complaint with the Court on June 18, 2010, seeking $42,344 for the "overpayment of 2004, 2006, 2007 and 2008 federal income taxes." Compl. at 1. On March 24, 2011 plaintiffs agreed to dismiss the claims related to tax years 2007 and 2008 as they were referenced in the complaint only to acknowledge offsets affecting the 2006 tax year. *See* Order, Mar. 24, 2011, ECF No. 17. The Court also later held that plaintiffs' 2004 claims were limited to $20,952.43, based on overpayments and credits within the look-back window. Order, Aug. 7, 2012, ECF No. 29. At a status conference held on April 17, 2013, plaintiffs orally moved to dismiss their claim related to the 2006 tax year. *See* Order, Apr. 23, 2013, ECF No. 40. Thus, by May 2013 --- following various motions and hearings, which do not directly involve the question before the Court --- the only remaining claim before the Court was that plaintiffs' alleged 2004 $78,000 IRA rollover was a non-taxable event entitling them to a refund of 2004 federal income taxes.

On May 11, 2013, following a court order, plaintiffs provided discovery responses to the government. Def.'s Mot. for Summ. J. (Def.'s Mot.), App. 1. Defendant filed a motion for summary judgment, arguing that plaintiffs' complaint and discovery responses provided no evidence that their 2004 IRA distributions were non-taxable events. *Id.* at 4. The government maintains that summary judgment is in order under RCFC 56(a), as plaintiffs cannot show a genuine dispute as to any material facts. *See id.* at 3–4 (citing *Thomas v. United States*, 56 Fed. Cl. 112, 116 (2013)).

Plaintiffs were permitted to belatedly file a response to defendant's motion for summary judgment. *See* Pls.' Opp'n. In this document, they argued that the $78,000 withdrawn from their IRAs was rolled over to something they called a "Business Owners Retirement Savings Account." *Id.* at 2. Defendant replied in support of its motion for summary judgment, arguing that "plaintiffs cannot produce evidence showing that the real estate investment in question meets the strictures of a qualifying IRA under [26 U.S.C.] § 408." Def.'s Rep. in Supp. of Mot. for Summ. J. (Def.'s Reply) at 1–2. The government added that, even if plaintiffs' claims were construed to be based on a one-participant retirement plan under 26 U.S.C. §401, plaintiffs had failed to produce evidence supporting the existence of such a plan. *Id.* at 3–6. Plaintiffs were then allowed a sur-reply, in which they stated the dates of the initial IRA withdrawals, and the date of their commercial real estate purchase. Pls.' Sur-Reply to Mot. for Summ. J. at 2, June 6, 2014, ECF No. 51.

Shortly before the Court held a hearing on defendant's motion, plaintiffs submitted copies of six exhibits they intended to rely upon at the hearing, including a checking account statement with handwritten notations indicating when the two IRA distributions were deposited. *See* Sched. 5 to Pls.' Exs., March 19, 2015, ECF No. 55. In light of plaintiffs' *pro se* status, the Court granted leave to file these exhibits. Order, Mar. 19, 2015, ECF No. 54. At the conclusion of the hearing, the Court announced that summary judgment would be entered in defendant's favor, and this opinion memorializes that ruling.

## II. DISCUSSION

### A. Applicable Legal Standards

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562–63 (Fed. Cir. 1987); *Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 743 (2005). Material facts are those

"that might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248. A dispute over facts is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.*

The moving party may base its motion for summary judgment on the "absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. For its part, the non-moving party is not obliged to "produce evidence in a form that would be admissible at trial" in order to demonstrate the existence of a genuine issue of material fact. *Id.* at 324. If the non-moving party's evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted); *Veit & Co. v. United States*, 56 Fed. Cl. 30, 34 (2003). "The party opposing the motion must point to an evidentiary conflict created on the record; mere denials or conclusory allegations are insufficient." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985) (citation omitted); *see also Veit*, 56 Fed. Cl. at 34.

## B. The IRA Distributions Were Not Placed in a Valid Retirement Plan

The basis of plaintiffs' claim is that the IRS should not have classified the 2004 IRA distributions of $78,000 as income and, therefore, taxable because they were rolled into another IRA. To prevail on their claim, plaintiffs needed to demonstrate the existence of the IRA through which the funds were invested.[1] An IRA requires, among other things, a written plan and designation of an appropriate trustee. 26 U.S.C. § 408(a); *see also* 26 C.F.R. § 1.408-2(b); *Schoof v. Commissioner*, 110 T.C. 1, 7–8 (1998); *Cobb v. Commissioner*, 77 T.C. 1096, 1099 (1981).

The government requested from the Powells documentation of the existence of the IRA which allegedly received the distributions, and specifically sought its written plan and the identity of the trustee. Def's Mot. to Compel, Ex. 2, March 12, 2013, ECF 33. In response, the Powells did not produce a written plan for the IRA or the name of the IRA's trustee. Not only have the Powells failed to identify any support for the existence of the IRA through which the $78,000 in IRA distributions were allegedly invested, at oral argument Mr. Powell conceded that there was no written agreement and no trustee. Mister Powell admitted that the Powells purchased the property in their individual capacities and held it individually until

---

[1] The government also argued that plaintiffs failed to show that the IRA distributions were rolled over within the required 60 day time period. Viewing the evidence in the light most favorable to the non-moving party, however, the "rollover" of the funds could have been within the 60 day period. The IRA distributions (as shown on plaintiffs' bank statements) were made on November 23 and December 8, and the purchase of the property was on December 10. *See* Scheds. 4–5 to Pls.' Exs., March 29, 2015, ECF 55. Thus, had the purchase of the property constituted a valid rollover, it could have been timely.

2012, when it was sold to a corporation. The property has never been held in trust or in an IRA account. Mister Powell's understanding was merely that any money withdrawn from an IRA and invested in a business still counted as being in an IRA.

To this end, plaintiffs argued that their IRA distributions were used in something called a BORSA, or "Business Owners Retirement Savings Account," which they claimed need not be reported until the plan terminates due to the small size of the rollover, under IRS Form 5500. Pls.' Opp'n at 2. Apparently, BORSA is a trade name for a type of vehicle the IRS calls "ROBS" or a "rollover as business startup." The IRS views a ROBS as a questionable, but not necessarily abusive, mechanism for individuals to roll retirement funds into a new business. I.R.S. Memo, Guidelines Regarding Rollovers as Business Start-Ups (Oct. 1, 2008), available at https://www.irs.gov/pub/irs-tege/robs_guidelines.pdf. The IRS has stated that a ROBS may work as a legitimate tax planning entity but recommends assessment on a case-by-case basis through IRS determination letters. *Id.* The steps generally to create a ROBS are as follows:

1. The individual creates a new corporation for the purpose of running a qualified retirement plan.
2. The new corporation creates a qualified employee retirement plan and allows participants to invest in the plan through corporate stock.
3. The individual becomes an employee of the corporation and enrolls in the plan.
4. The individual either conducts a rollover or direct trustee-to-trustee transfer of funds from a qualified personal IRA or previous employer's § 401 plan into the new corporate retirement plan.
5. The individual directs his account balance in the qualified retirement plan to purchase employer stock.
6. The individual then uses the transferred funds to begin a business enterprise.

*Id.* Plaintiffs conceded that they did not follow these required, formal steps.[2]

The government is correct that, under 26 U.S.C. § 401 and its implementing regulations, "one participant retirement plans" need written trust instruments and certain other formalities. *See* Def.'s Reply at 4–6 (citing, *inter alia*, 26 U.S.C. § 401(a); 26 C.F.R. § 1.401-1(a)(2)). But, as was discussed above, the Powells did not have a written plan. And while it may be true that one participant plans with less

---

[2] No corporation was created for purposes of running a qualified retirement plan. Prospect Hill Enterprise LLC, an entity which appears to currently hold title to the property, was created in 2012. *See* Sched. 6 to Pls.' Exs., March 29, 2015, ECF 55. Not having existed when the IRA distributions were made and the proceeds reinvested, this entity could not have played a role in a ROBS transaction.

than $250,000 worth of assets are not required to file annual reports until their final year of existence, *see* 29 U.S.C. § 1365, *Pensions and Welfare Plans Required to File Annual Report/Return*, IRS, https://www.irs.gov/instructions/i5500sf/ch01.html (last visited March 15, 2016), to be plans in the first place such entities need trust instruments, *see* 26 U.S.C. § 401(a), and "a definite written program and arrangement," 26 C.F.R. § 1.401-1(a)(2). With no written plan in existence under which the IRA distributions were reinvested, the arrangement could not have employed a qualified trust under 26 U.S.C. § 401.

Not only is there no genuine dispute of material fact, but there is no dispute on this point, period. At oral argument, Mr. Powell conceded that while he had a business plan concerning the real estate he purchased with the IRA distributions, a written plan for an IRA through which the investment was made did not exist. Plaintiffs withdrew money from IRAs to purchase land in their individual capacities, and the land was not purchased through or held by another IRA. As no IRA existed into which plaintiffs could have rolled the 2004 IRA distributions, the IRS properly classified the distributions as income. Accordingly, plaintiffs are not owed a partial refund of their 2004 federal income taxes, and defendant is entitled to judgment as a matter of law.

### III. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment under RCFC 56(a) is **GRANTED**. The Clerk shall enter judgment accordingly. No costs shall be awarded.

**IT IS SO ORDERED.**

_____
VICTOR J. WOLSKI
Judge